UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNA MARIA CULMONE-SIMETI,

                        Plaintiff,

            - against -

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                        Defendant.

**OPINION AND ORDER**

17 Civ. 2313 (ER)

Ramos, D.J.:

      Anna Maria Culmone-Simeti, proceeding *pro se*, sues her former employer the New York City Department of Education ("DOE") under the Age Discrimination in Employment Act of 1967 ("ADEA"), New York State Human Rights Law ("NYSHRL"), and New York City Human Rights Law ("NYCHRL"). Specifically, Culmone-Simeti alleges that the DOE subjected her to age-based discrimination as part of a campaign to purge her school of its older educators. The DOE now moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the DOE's motion is GRANTED.

**I.    BACKGROUND**

    **A.    Factual Background[1]**

---

[1] The following facts, accepted as true for purposes of the instant motion, are based on the allegations in Culmone-Simeti's Complaint and Opposition to Defendant's Motion to Dismiss, including attached affidavits. *See Walker v. Schult*, 717 F.3d 119, 121, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion."); *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering allegations in a *pro se* plaintiff's affidavit in opposition to a motion to dismiss in addition to those in the complaint).

Culmone-Simeti was born in July 1956 and began working as a teacher for what is now the DOE in October 1994, teaching English as a second language ("ESL"). Compl. add. ¶¶ 1–2, Doc. 2. In February 2005, she began working at Murry Bergtraum High School but was "excessed" in approximately 2010.[2] Culmone-Simeti Aff. ¶¶ 2, 4, Doc. 22; Pl.'s Mem. Opp'n 1, Doc. 22.

Culmone-Simeti alleges that in September 2012 the new principal of Murray Bergtraum, Lottie Almonte, met with the assistant principals and told them to rate all the teachers in the school as "ineffective." Culmone-Simeti Aff. ¶ 2. Upon returning to Murry Bergtraum in September 2013, Culmone-Simeti allegedly faced a hostile environment where "the administration was not very friendly toward the older teachers." *Id.* Culmone-Simeti alleges that in October 2013 she applied via email for a senior advisor position and was invited to discuss it with Principal Almonte. *Id.* ¶ 3; Pl.'s Mem. Opp'n 25. She soon met with Principal Almonte but was informed that the position had been filled, later learning that it was given to a "young new member of the administration," Kian Brown. Culmone-Simeti Aff. ¶ 3. Principal Almonte further informed her that if a certain number of her students did not pass a standardized test, she would get an "ineffective" rating. *Id.* During this meeting, Principal Almonte asked her when she began teaching at Murry Bergtraum; when Culmone-Simeti responded that she had begun working in 2005, Principal Almonte grinned and responded, "Ah, you're part of *that team*!" *Id.* ¶ 4 (emphasis added).

In addition, when Culmone-Simeti asked for assistance with the evaluation system, Assistant Principal Woods-Powell told her to "figure it out" herself but then directed her to speak

---

[2] As Culmone-Simeti explained in a hearing before the Court, the term "excessed" means that the school put her on temporary leave because of a decrease in enrollment or funds. Oct. 20, 2017 Conf. Tr. 5:9–14, Doc. 14.

with the new ESL coordinator, Jesus Duran, who was working closely with Assistant Principal Woods-Powell. *Id.* ¶ 5. When Culmone-Simeti met with Mr. Duran, he said that she had "the appearance of someone who is not focused, not prepared," that she had been seen "hyperventilating," and that "[i]f this was a company it could cost [Culmone-Simeti her] career." *Id.* ¶ 7. On five occasions between February and May 2014, Mr. Duran told Culmone-Simeti to "stay away from the teachers' [u]nion," and in one instance told her, "One day you'll be sorry . . . and the [u]nion won't be able to do anything for you . . . ." *Id.* ¶ 10–11. In March 2014, Mr. Duran informed her that Assistant Principal Woods-Powell believed that she had taught the first unit of a book incorrectly and that she needed to reteach it. *Id.* ¶ 13. Culmone-Simeti disputes this assessment but retaught the unit anyway, and as a result, she fell behind on her schedule, for which Mr. Duran further criticized her. *Id.* ¶ 13–14.

At various times, Assistant Principal Woods-Powell insinuated that Culmone-Simeti was lying and frequently indicated that she should learn from her younger colleagues. *Id.* ¶¶ 6, 16–18; Pl.'s Mem. Opp'n 7. Culmone-Simeti also contends that Assistant Principal Woods-Powell once "shushed" her in front of her class, and that she offered to model a lesson for her but never actually did so. Culmone-Simeti Aff. ¶¶ 20, 22. In contrast, Culmone-Simeti alleges that Assistant Principal Woods-Powell favored younger teachers, praising them often and dedicating extra time to them at the end of department conferences. Pl.'s Mem. Opp'n 7.

Culmone-Simeti alleges that in December 2014 Assistant Principal Woods-Powell rated her "ineffective" by falsely reporting that, among other things, she was not warm with her students and did not have a log for students to sign when they arrived late to class. Culmone-Simeti Aff. ¶¶ 15, 21. Prior to this "ineffective" rating, Culmone-Simeti had 17 consecutive years of satisfactory ratings, which she attributed to her experience and education including "a

3

college degree from Europe and a Master's Degree equivalency from Adelphi College." *Id.* ¶¶ 23–24.

At the end of January 2015, Culmone-Simeti enrolled in a Peer Intervention Program ("PIP") to try to improve her teaching. *Id.* ¶ 24. The new principal of Murry Bergtraum, Naima Cook, told the PIP coach that Culmone-Simeti "can't get better" and "can't be part of the program." *Id.* Culmone-Simeti further alleges that Principal Cook or an assistant principal observed her class at least six times notwithstanding that the UFT-DOE contract states that a teacher in the PIP program is not supposed to be observed by the administration for the first three months that she is being coached. *Id.* ¶ 25.

Culmone-Simeti alleges that on September 18, 2015, the school lodged "false disciplinary charges" against her based on her last two ratings of "ineffective," pursuant to New York Education Law § 3020-a.[3] Compl. add. ¶ 4; Pl.'s Mem. Opp'n 2. Culmone-Simeti asserts that she was actually charged because of her age. Compl. add. ¶ 7; Pl.'s Mem. Opp'n 3. She was briefly represented by an attorney from her union in the disciplinary case, but she soon retained a different attorney because the union attorney "seemed to have the interests of the Department of Education as a priority." Pl.'s Mem. Opp'n 2–3.

Culmone-Simeti attended the disciplinary hearing with her new attorney on November 30, 2015. *Id.* at 3. At the hearing, she was offered a settlement that would drop the § 3020-a charges based on her ineffective ratings in exchange for her resignation. Post-Charge Stipulation

---

[3] New York Education Law § 3020-a sets out the procedures and penalties for discipline of teachers. "If a teacher . . . is rated ineffective for the second consecutive year, and an independent validator agrees, the district may bring a proceeding pursuant to Education law §§ 3020 and 3020-a." *Douglas v. N.Y.C. Dep't of Educ.*, 34 N.Y.S.3d 340, 346 (Sup. Ct. 2016) (citing N.Y. Educ. Law § 3012-c(5-a)(j)).

4

of Settlement, Saint-Fort Decl. Ex. B, Doc. 17.[4] Culmone-Simeti alleges that she was told she would be fired if she did not sign the agreement to resign as of January 29, 2016. Compl. add. ¶ 4. Culmone-Simeti alleges that her attorney told her he needed to catch a flight that afternoon because his mother was very sick and "pressured [her] to make a hastened decision," and that she "felt rushed and did not understand the consequences of the settlement, as her attorney did not explain it to her in detail." Pl.'s Mem. Opp'n 4. Culmone-Simeti also claims that the agreement omitted certain language that was required by the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f), including her right to consider the agreement for 21 days and to revoke it within 7 days after execution. Compl. add. ¶ 5; Pl.'s Mem. Opp'n 3. Nonetheless, the settlement agreement also stated that Culmone-Simeti "had all the terms and conditions of this Stipulation of Settlement (the 'Stipulation') thoroughly explained," that she "freely consent[s] to enter into this Stipulation, such consent not having been induced by fraud, duress, or any other influence," that she "affirms that she has entered into this agreement freely, knowingly, intelligently, and openly, without coercion or duress and that she voluntarily waives any statutory, contractual, or constitutional rights that [s]he may have in this matter," and that she "affirms that she had access to counsel in reaching this Stipulation and consulted with counsel regarding the terms of this Stipulation and entered into this Stipulation with the advice and consent of counsel." Post-Charge Stipulation of Settlement 1, 4 ¶¶ 8, 10. Culmone-Simeti and her attorney both signed the settlement agreement that day. *Id.* at 4–5.

---

[4] The DOE submitted a copy of the settlement agreement in support of its motion to dismiss. The Court deems the settlement agreement incorporated into the Complaint since it is directly referenced in and integral to the Complaint, and thus the Court may consider it on a motion to dismiss. *See* Compl. add. ¶¶ 4–6 (stating that Culmone-Simeti was forced to "sign an agreement to resign"); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (holding that the court can consider documents that are incorporated into the complaint by reference or are integral to the complaint on a Rule 12(b)(6) motion).

5

Notwithstanding the foregoing, Culmone-Simeti claims that she "signed the Stipulation under duress" and faced a "forced retirement under duress" five months short of her twenty-year anniversary, at which point she would have become eligible for certain pension benefits. Pl.'s Mem. Opp. 4; Compl. add. ¶¶ 6–7.

In addition to the circumstances leading up to her own retirement, Culmone-Simeti sets forth details about seven other people who she claims were harassed or ousted from Murry Bergtraum due to age discrimination, as well as four affidavits from former school employees attesting to the hostile environment. Pl.'s Mem. Opp'n 5–7, 18–21. For example, Culmone-Simeti alleges that an assistant principal remarked that a 61-year-old special education teacher, Judith Keller, "looks like she's dying." Pl.'s Mem. Opp'n 6. Additionally, two affiants, former ESL teacher Gabrielle Irlinger and former English teacher Andrea Dupre, claim that Assistant Principal Woods-Powell told them that the school needed "fresh blood" or "new blood." *Id.* at 20–21. Another affiant, former teacher Danielle Holmgren-Ferrara, states that Assistant Principal Woods-Powell told her that she could "never learn anything from an older teacher" and that she should "ask a first year teacher" for guidance. *Id.* at 19.

### B.  Procedural History

Culmone-Simeti filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in March 2016. Compl. ¶ III(A). The EEOC issued her a notice of dismissal and right-to-sue letter on February 7, 2017. *Id.* at 6.

Culmone-Simeti filed the instant action on March 30, 2017. *Id.* at 1. The Complaint asserts three claims: (1) age discrimination in violation of the ADEA; (2) age discrimination in violation of the NYSHRL; and (3) age discrimination in violation of NYCHRL. *Id.* at 1, 3 ¶ II(D).

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard under Rule 8, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, a plaintiff is required to support her claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### B. *Pro Se* Plaintiff

Courts should read *pro se* pleadings "liberally and interpret them to raise the strongest arguments that they suggest." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (quoting *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999)). The obligation to read a *pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. NYS Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). "However, even pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### C. Employment Discrimination Cases

When a defendant moves to dismiss an employment discrimination action, both the *Iqbal* plausibility standard and the standard for pleading employment discrimination must be applied. The Supreme Court held that in an employment discrimination action under the ADEA, a complaint need not contain specific facts that establish a *prima facie* case of discrimination.[5] *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 515 (2002); *see also EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) ("*Swierkiewicz* has continuing viability, as modified by *Twombly* and *Iqbal*."). Nonetheless, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." *Littlejohn v. City of New York*, 795 F.3d 297, 311 n.9 (2d Cir. 2015) (quoting *Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013)); *see also Trachtenberg v. Dep't of Educ.*, 937 F. Supp. 2d 460, 465 (S.D.N.Y. 2013) (stating that the elements of a *prima facie* discrimination case do "provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible" (quoting *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 461 (S.D.N.Y. 2013))).

Thus, in an ADEA case, "[t]o survive a motion to dismiss under Rule 12(b)(6), 'what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Franchino v. Terence Cardinal Cook Health Care Ctr., Inc.*, 692 F. App'x 39, 41 (2d Cir. 2017) (quoting *Littlejohn*, 795 F.3d at 311); *see also Marcus v. Leviton Mfg. Co.*, 661 F. App'x 29, 31–

---

[5] A *prima facie* case of age discrimination is established by showing (1) membership in a protected class, (2) qualification for the position, (3) an adverse employment action, and (4) circumstances supporting an inference of age discrimination. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (citing *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 639 (2d Cir. 2000)).

8

32 (2d Cir. 2016) (holding that the plaintiff must "plead facts that give 'plausible support to a minimal inference' of the requisite discriminatory causality" (quoting *Littlejohn*, 795 F.3d at 310–11)). Additionally, because a plaintiff in an ADEA case must ultimately show that age was the but-for cause of the adverse employment action,[6] *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177 (2009), on a motion to dismiss, the plaintiff must merely plead "sufficient facts to plausibly support a minimal inference of 'but-for' causality between his age and his termination." *Marcus*, 661 F. App'x at 32. In other words, the plaintiff need only allege sufficient facts to plausibly support a minimal inference that the adverse employment action would not have occurred without the plaintiff's age.

## III. DISCUSSION

### A. ADEA Claim

The ADEA makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see also id.* § 631(a) (establishing that the ADEA applies only to individuals who are at least 40 years old). As explained above, on a motion to dismiss, a plaintiff must plausibly allege that she "is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Franchino*, 692 F. App'x at 41 (quoting *Littlejohn*, 795 F.3d at 311).

---

[6] The requirement that age was the but-for cause of the employment action does not equate to "a requirement that age was the employer[']s *only* consideration, but rather that the adverse employment action[] *would not have occurred without it*." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (second alteration in original) (quoting *Fagan v. U.S. Carpet Installation, Inc.*, 770 F. Supp. 2d 490, 496 (E.D.N.Y. 2011)).

9

#### 1. Protected Class

Culmone-Simeti was 57 years old when the DOE allegedly began discriminating against her because of her age. *See* Compl. add. ¶ 2 (stating that she was born in July 1956); Culmone-Simeti Aff. ¶ 2 (alleging that she faced a hostile environment upon returning to Murry Bergtraum in September 2013). Accordingly, she has adequately pleaded that she belongs to a protected class.

#### 2. Qualification for the Position

To satisfy the second element, a "plaintiff must show only that he 'possesses the basic skills necessary for performance of [the] job.'" *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) (alteration in original) (quoting *Owens v. N.Y.C. Hous. Auth.*, 934 F.2d 405, 409 (2d Cir. 1991)). Culmone-Simeti alleges that she had been an ESL teacher for nearly 20 years when she resigned in 2016, Compl. add. ¶ 3, including 17 years earning satisfactory ratings, and that she has a college degree and master's degree equivalency, Culmone-Simeti Aff. ¶ 24. Accordingly, Culmone-Simeti has plausibly alleged that she was qualified for her position.

#### 3. Adverse Employment Action

A plaintiff has suffered an adverse employment action where she has endured "a 'materially adverse change' in the terms and conditions of employment." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).

Culmone-Simeti asserts that she was forced to resign because of her age. Compl. add. ¶¶ 6–7. "A voluntary resignation does not constitute an adverse employment action unless the plaintiff was constructively discharged — i.e., the resignation was in fact *involuntary* as a result

of coercion or duress." *Cadet v. Deutsche Bank Sec., Inc.*, No. 11 Civ. 7964 (CM), 2013 U.S. Dist. LEXIS 87328, at *30 (S.D.N.Y. June 18, 2013); *see also Chanval Pellier v. British Airways, Plc.*, No. 02 Civ. 4195, 2006 U.S. Dist. LEXIS 3219, at *4 (E.D.N.Y. Jan. 17, 2006). An employee is constructively discharged when an employer, "rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Chamblee v. Harris & Harris, Inc.*, 154 F. Supp. 2d 670, 675 (S.D.N.Y. 2001). "Working conditions are intolerable if they are 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'" *Id.* (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996)).

Here, Culmone-Simeti has not plausibly alleged that her resignation constituted a constructive discharge or an adverse employment action. Courts regularly refuse to find constructive discharge "where an employee had an avenue through which he could seek redress for the allegedly 'intolerable' work atmosphere . . . but failed to take advantage thereof." *Silverman v. City of New York*, 216 F. Supp. 2d 108, 115 (E.D.N.Y. 2002), *aff'd*, 64 F. App'x 799 (2d Cir. 2003); *see also Stembridge v. City of New York*, 88 F. Supp. 2d 276, 285–86 (S.D.N.Y. 2000) (finding no constructive discharge where the "plaintiff had the opportunity to present his side of the story in the scheduled disciplinary hearing" but "chose not to participate in the process"), *aff'd mem.*, No. 00-7668, 2000 U.S. App. LEXIS 38697 (2d Cir. Dec. 18, 2000). Culmone-Simeti alleges that she "was told [she] would be fired if [she] did not sign an agreement to resign," but she could have disputed the negative ratings that formed the basis for such a firing at her disciplinary hearing. Compl. add. ¶ 4. Instead, at the hearing, she opted to resign, and in exchange, the DOE dropped the disciplinary charges against her. Post-Charge

11

Stipulation of Dismissal ¶ 1. Because she chose not to seek redress through the disciplinary process, she was not constructively discharged.

Nonetheless, Culmone-Simeti argues that she signed the agreement to resign under duress. "In order for a contract to be void for duress, one of three circumstances must be present: duress by physical compulsion, duress by threat or [duress] by undue influence." *Reid v. IBM Corp.*, No. 95 Civ. 1755 (MBM), 1997 U.S. Dist. LEXIS 8905, at *20 (S.D.N.Y. June 26, 1997) (alteration in original) (quoting *Evans v. Waldorf-Astoria Corp.*, 827 F. Supp. 911, 913 (E.D.N.Y. 1993), *aff'd mem.*, 33 F.3d 49 (2d Cir. 1994)). There is no allegation that Culmone-Simeti was physically compelled. Although she alleges that she "was told [she] would be fired if [she] did not sign an agreement to resign," Compl. add. ¶ 4, this does not constitute duress by threat because, as explained above, she had a viable alternative to contest the charges that formed the basis for a firing. *See Wolfson v. Wolfson*, No. 03 Civ. 0954 (RCC), 2004 U.S. Dist. LEXIS 1485, at *19 (S.D.N.Y. Feb. 5, 2004) (stating that duress by threat requires "(1) a threat, (2) which was unlawfully made, (3) caused involuntary acceptance of contract terms, (4) and the circumstances permitted no alternative").

With respect to undue influence, Culmone-Simeti alleges that she did not have enough time to consider the agreement because her attorney "told her that his mother in Florida was very sick and he had to catch a flight that afternoon." Pl.'s Mem. Opp'n 4. But this does not reflect the requisite "wrongful and oppressive conduct that precluded the plaintiff from the exercise of [her] own free will" that must be shown to state a claim of duress. *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 403 (S.D.N.Y. 2017) (quoting *McIntosh v. Consol. Edison Co.*, No. 96 Civ. 3624 (HB), 1999 U.S. Dist. LEXIS 3264, at *5 (S.D.N.Y. Mar. 19, 1999), *aff'd in unpublished table decision*, 216 F.3d 1072 (2d Cir. 2000)). Moreover, this purported undue pressure, if such

12

it was, was applied by her *own* attorney, a third party. *See* Restatement (Second) of Contracts § 177(3) (Am. Law Inst. 1981) (stating that undue influence by a third party does not void a contract if "the other party to the transaction in good faith and without reason to know of the undue influence either gives value or relies materially on the transaction"). Nowhere in her papers does Culmone-Simeti allege that the DOE had knowledge of the attorney's personal circumstances that could support invalidating the agreement under which it performed.

Further, the agreement specifically stated that Culmone-Simeti "had all the terms and conditions of this Stipulation of Settlement (the 'Stipulation') thoroughly explained," that she "freely consent[s] to enter into this Stipulation, such consent not having been induced by fraud, duress, or any other influence," that she "affirms that she has entered into this agreement freely, knowingly, intelligently, and openly, without coercion or duress," and that she "consulted with counsel regarding the terms of this Stipulation and entered into this Stipulation with the advice and consent of counsel." Post-Charge Stipulation of Settlement 1, 4 ¶¶ 8, 10. Culmone-Simeti and her attorney both signed the document. *Id.* at 4–5. These explicit affirmations of her voluntary assent to the agreement, and the fact that she was represented by counsel, undermine any claim of duress. Moreover, even if the agreement were somehow invalid, she ratified the agreement when she accepted its benefits by continuing to work for two months and then resigning with the charges dismissed from her disciplinary record. *See Williams v. Dep't of Educ.*, No. 16 Civ. 980, 2016 U.S. Dist. LEXIS 118203, at *14 (S.D.N.Y. Sept. 1, 2016) ("[T]he DOE had already performed its portion of the bargain, and [Plaintiff] had already accepted the benefits: continuing to work and retiring with a record unblemished by the DOE's charges. Under such circumstances, [Plaintiff's] conduct constitutes ratification of the Settlement . . . .").

Culmone-Simeti also argues that her resignation was involuntary because the settlement agreement did not comply with the OWBPA. Pl.'s Mem. Opp'n 3–4. The OWBPA buttresses the protections of the ADEA by providing that "[a]n individual may not waive any *right or claim* under [the ADEA] unless the waiver is knowing and voluntary" and complies with certain enumerated safeguards. 29 U.S.C. § 626(f)(1) (emphasis added). Thus, to the extent the settlement agreement failed to comply with the OWBPA, Culmone-Simeti may not have validly waived any *right or claim* under the ADEA for age discrimination, but this failure has no bearing on the validity of her *resignation*. Accordingly, the OWBPA does not affect the voluntariness of her resignation.

Culmone-Simeti's allegations suggest other possible adverse employment actions, but they are also unavailing. For instance, she alleges that she received negative performance ratings. Pl.'s Mem. Opp'n 7. However, negative performance evaluations alone do not constitute adverse employment actions. *See Spaulding v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 3041 (KAM) (VMS), 2015 U.S. Dist. LEXIS 127076, at *128–29 (E.D.N.Y. Feb. 19, 2015), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 126292 (E.D.N.Y. Sept. 21, 2015). She also alleges that she was subjected to disrespectful and condescending behavior, such as being "shushed." Pl.'s Mem. Opp'n 7–8; Culmone-Simeti Aff. ¶ 20. However, "'trivial harms' — i.e., 'those petty slights or minor annoyances that often take place at work and that all employees experience'" — do not qualify as "materially adverse" employment actions. *Leon v. Dep't of Educ.*, No. 15 Civ. 7275 (KPF), 2017 U.S. Dist. LEXIS 45112, at *16 (S.D.N.Y. Mar. 27, 2017) (quoting *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 25 (2d Cir. 2014)). Culmone-Simeti further suggests a claim for the DOE's failure to promote her to the senior advisor position, which was instead "given to a young new member of the

administration." Culmone-Simeti Aff. ¶ 3. A "claim of discriminatory failure to promote falls within the core activities encompassed by the term 'adverse actions.'" *Treglia v. Town of Manlius*, 313 F.3d 713, 720 (2d Cir. 2002). However, her failure-to-promote claim is time-barred, as she unsuccessfully applied for the position in October 2013, Culmone-Simeti Aff. ¶ 3, which is more than 300 days before she filed her charge of discrimination with the EEOC in March 2016, Compl. ¶ III(A). *See Leon*, 2017 U.S. Dist. LEXIS 45112, at *15–16 (holding that an ADEA claim predicated on an adverse action more than 300 days prior to the EEOC charge was time-barred).

### 4. Circumstances Supporting a Minimal Inference of Discrimination

To withstand a motion to dismiss, a plaintiff must plead "sufficient facts to plausibly support a minimal inference of 'but-for' causality" between her age and the adverse employment action. *Marcus*, 661 F. App'x at 32. However, as explained above, Culmone-Simeti has failed to allege an adverse employment action. Although she has alleged several remarks and treatment that may suggest age-based animus,[7] these allegations do not support a minimal inference that they caused any cognizable adverse employment action.

---

[7] "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in [age-related] degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the [adverse action].'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)); *see also Leon*, 2017 U.S. Dist. LEXIS 45112, at *18–19 (recognizing a minimal inference of discrimination where, "[t]hrough her alleged words and actions, [the principal] manifested a bias against [school] employees over the age of 40"). Additionally, in a failure-to-promote claim, an inference of discrimination can be shown "if the position was filled by someone not a member of plaintiff's protected class." *Moorehead v. N.Y.C. Transit Auth.*, 385 F. Supp. 2d 248, 252 (S.D.N.Y.) (quoting *Gomez v. Pellicone*, 986 F.Supp. 220, 228 (S.D.N.Y. 1997)), *aff'd*, 157 F. App'x 338 (2d Cir. 2005). If Culmone-Simeti had properly alleged an adverse employment action, she could point to numerous allegations supporting an inference of discrimination. For example, Culmone-Simeti alleges that the senior advisor position she applied for was given to "a young new member of the administration," suggesting that this individual was not a member of her protected class. Culmone-Simeti Aff. ¶ 3. Moreover, Culmone-Simeti alleges that Assistant Principal Woods-Powell favored younger teachers, praising them often and dedicating extra time to them, while she criticized Culmone-Simeti and never followed through on modeling a lesson for her. Pl.'s Mem. Opp'n

\* \* \*

Because Culmone-Simeti has failed to plausibly allege an adverse employment action, her ADEA claim must be dismissed.

### B. NYSHRL and NYCHRL Claims

Culmone-Simeti stated in a letter to the Court that she has abandoned her NYSHRL and NYCHRL claims, explaining that she is "not pursuing claims under the state and city law so [the DOE's] arguments on that point are moot." Pl.'s Oct. 12, 2017 Letter 2, Doc. 13. Accordingly, Culmone-Simeti's NYSHRL and NYCHRL claims are dismissed.[8]

## IV. AMENDMENT

The Second Circuit has instructed courts not to dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). In

---

7; Culmone-Simeti ¶ 22–23. In addition, Culmone-Simeti alleges that Assistant Principal Woods-Powell indicated that older teachers should learn from their younger colleagues, even telling one teacher that she could "never learn anything from an older teacher" and that she should "ask a first year teacher" for guidance. Pl.'s Mem. Opp'n 7, 19. Next, Culmone-Simeti alleges that Assistant Principal Woods-Powell told two teachers that the school needed "fresh blood" or "new blood." *Id.* at 20–21. Lastly, one of the assistant principals allegedly remarked that a 61-year-old teacher "looks like she's dying." *Id.* at 6.

[8] The Court notes that these claims would also appear to be barred by the waiver in Culmone-Simeti's settlement agreement, in which she agreed that "she will not institute a lawsuit or claim in any court . . . with respect to any matter arising from or related to her employment with the [DOE]." Post-Charge Stipulation of Settlement ¶ 6. Although the failure to adhere to certain requirements under the OWBPA can invalidate the waiver of ADEA claims, 29 U.S.C. § 626(f), waivers of NYSHRL and NYCHRL claims are not required to abide by the OWBPA. *Branker v. Pfizer, Inc.*, 981 F. Supp. 862, 867 (S.D.N.Y. 1997). These claims would also appear to be barred for failure to comply with the notice-of-claim requirements set out in New York Education Law § 3813. *See* N.Y. Educ. Law § 3813(1) (stating that no action can be maintained against a school district "unless it shall appear by and as an allegation in the complaint . . . that a written verified claim upon which such action . . . is founded was presented to the governing body of said district or school within three months after the accrual of such claim"); *see also Legrá v. Bd. of Educ.*, No. 14 Civ. 9245 (JGK), 2016 U.S. Dist. LEXIS 144817, at \*6–8 (S.D.N.Y. Oct. 19, 2016) (dismissing NYSHRL and NYCHRL claims against the DOE for failure to plead compliance with notice-of-claim requirements).

*Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015), the Second Circuit reaffirmed the "liberal spirit" of amendment under Federal Rule of Civil Procedure 15 and counseled strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *Id.* at 190–91 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (per curiam)).

As this is the Court's first opportunity to highlight the precise defects of Culmone-Simeti's pleading and it is not yet apparent that the opportunity to amend would be futile, she will be permitted to replead her dismissed claims in an amended complaint.

## V. CONCLUSION

For the reasons set forth above, the DOE's motion to dismiss is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 16. Culmone-Simeti may file an amended complaint, if at all, on or before **August 10, 2018**.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

It is SO ORDERED.

Dated: July 11, 2018
New York, New York

Edgardo Ramos, U.S.D.J